IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JCZQ FAMILY, LP and JORGE C. ZAMORA-QUEZADA, M.D., M.P.H., P.A., | § § § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 7:16-cv-00272 |
| HITACHI MEDICAL SYSTEMS AMERICA, INC. and GREG OESTERLING, | § § § | |
| | § | |
| *Defendants*. | § | |

## <u>HITACHI MEDICAL SYSTEMS AMERICA, INC.'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

I. Introduction ........................................................................................................... 1

II. Background .......................................................................................................... 2

    A.   HMSA Sold JCZQ Two MRI Machines More Than Ten Years Ago. ............................... 2

    B.   HMSA Sued JCZQ In Ohio For Breach Of Contract, And JCZQ Counterclaimed. ........... 3

    C.   The Ohio Court Dismissed Each Of JCZQ's Claims With Prejudice. ............................... 4

    D.   JCZQ Alleges The Same Claims Here That It Lost In Ohio. .............................................. 6

III. Argument ........................................................................................................... 8

    A.   Standard Of Review. ............................................................................................... 8

    B.   Res Judicata Bars JCZQ's Claims. ...................................................................... 9

        1.   The Prior Judgment In The Ohio Case Was Final On The Merits. ............................... 11

        2.   The Parties Are Identical To Or In Privity With One Another In Both This Case And The Ohio Case. ................................................................................................... 12

        3.   JCZQ's Claims Were, Or Could Have Been, Litigated In The Ohio Case. ................... 12

        4.   JCZQ's Claims Arise Out Of The Same Transaction Or Occurrence That Was The Subject Matter Of The Ohio Case. ......................................................................... 14

    C.   Each Of JCZQ's Claims Is Barred By The Applicable Statute Of Limitations. ............... 16

        1.   Fraud In The Inducement, Fraud By Non-Disclosure, And Negligent Misrepresentation. ........................................................................................... 17

        2.   Promissory Estoppel. ........................................................................................ 19

        3.   Unjust Enrichment And/Or Quantum Meruit. ........................................................ 20

        4.   Breach Of Contract. .......................................................................................... 21

    D.   JCZQ Has Failed To State A Claim For Its Fraud-Based Claims. ................................... 22

        1.   JCZQ Has Failed To State A Cause Of Action For Fraud In The Inducement. .............. 23

        2.   JCZQ Has Failed To State A Cause Of Action For Fraud By Non-Disclosure. .............. 26

        3.   JCZQ Has Failed To State A Cause Of Action For Negligent Misrepresentation. ......... 27

IV. Conclusion ......................................................................................................... 28

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   362 F. Supp. 2d 744 (N.D. Tex. 2005) ...........................................................27, 28

*Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*,
   262 S.W.3d 107 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ..........................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................9, 23

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996) ..................................................................................9

*Barker v. Eckman*,
   213 S.W.3d 306 (Tex. 2006)................................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................8, 9, 22, 23

*Bloom v. Burkholder Corp.*,
   No. 05–94–01297–CV, 1995 WL 379272, at *1 (Tex. App.—Dallas May 30,
   1995, no writ) (not designated for publication) ......................................................19

*Bradford v. Vento*,
   48 S.W.3d 749 (Tex. 2001)..................................................................................26

*Campbell v. City of San Antonio*,
   43 F.3d 973 (5th Cir. 1995) ................................................................................23

*Carroll v. Fort James Corp.*,
   470 F.3d 1171 (5th Cir. 2006) ............................................................................27

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ................................................................................3

*Coleman v. Rotana, Inc.*,
   778 S.W.2d 867 (Tex. App.—Dallas 1989, writ denied) ......................................18

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ..............................................................................2, 9

*Demsey v. Demsey*,
   488 Fed. App'x. 1 (6th Cir. 2012) ......................................................................13

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Doe ex rel. Doe v. Jackson Local Sch. Dist.*,
  422 Fed. App'x. 497 (6th Cir. 2011) ....................................................................13

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) .............................................................................24

*E.D. Sys. Corp. v. Sw. Bell Tel. Co.*,
  674 F.2d 453 (5th Cir. 1982) .............................................................................10

*Elledge v. Friberg-Cooper Water Supply Corp.*,
  240 S.W.3d 869 (Tex. 2007)..............................................................................20

*GJP, Inc. v. Ghosh*,
  251 S.W.3d 854 (Tex. App.—Austin 2008, no pet.) .......................................24, 25

*Grava v. Parkman Twp.*,
  73 Ohio St.3d 379, 653 N.E.2d 226, (1995) ..................................................14, 15

*Guidry v. Am. Pub. Life Ins. Co.*,
  512 F.3d 177 (5th Cir. 2007) ...............................................................................9

*Hall v. Hodgkins*,
  305 F. App'x 224 (5th Cir. 2008) ........................................................................10

*Hapgood v. City of Warren*,
  127 F.3d 490 (6th Cir. 1997) ....................................................................12, 13, 14

*Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*,
  No. 2011-03-1669 (Summit Cty. C.P. March 25, 2011).................................. passim

*Holland v. Thompson*,
  338 S.W.3d 586 (Tex. App.—El Paso 2010, pet. denied) .....................................17

*Hoover v. Gregory*,
  835 S.W.2d 668 (Tex. App.—Dallas 1992, writ denied) ......................................18

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  540 F. Supp. 2d 759 (S.D. Tex. 2007)............................................................26, 27

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
  818 F.3d 193 (5th Cir. 2016) ................................................................................1

*Johnson & Johnson Med., Inc. v. Sanchez*,
  924 S.W.2d 925 (Tex. 1996)...............................................................................24

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Johnson's Island, Inc. v. Bd. of Trs. of Danbury Twp.*, 69 Ohio St.2d 241, 244,
    431 N.E.2d 672 (1982)............................................................................................12

*Jones v. Alcoa, Inc.*,
    339 F.3d 359 (5th Cir. 2003) .................................................................................16

*Kirkhart v. Keiper*,
    101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089 ...........................10, 12, 14

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ...........................................................................27, 28

*Marion Family YMCA v. Hensel*,
    178 Ohio App. 3d 140, 2008–Ohio–4413, 897 N.E.2d 184, ¶ 7 (3d Dist.) ......18, 22

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ...................................................................................9

*Matter of Haber Oil Co., Inc.*,
    12 F.3d 426 (5th Cir. 1994) .............................................................................24, 25

*Mayo v. Hartford Life Ins. Co.*,
    354 F.3d 400 (5th Cir. 2004) .................................................................................20

*Medina v. I.N.S.*,
    993 F.2d 499 (5th Cir. 1993) .................................................................................10

*Prod. Supply Co. v. Fry Steel Inc.*,
    74 F.3d 76 (5th Cir. 1996) .....................................................................................10

*Provident Life & Accident Ins. Co. v. Knott*,
    128 S.W.3d 211 (Tex. 2003)...................................................................................17

*R2 Investments LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) .................................................................................10

*Reliable Consultants, Inc. v. Earle*,
    517 F.3d 738 (5th Cir. 2008) ...................................................................................8

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997)...................................................................................26

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
    509 F.3d 673 (5th Cir. 2007) ...................................................................................9

iv

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Spence v. Glock, Ges.m.b.H.,*
   227 F.3d 308 (5th Cir. 2000) ................................................................17

*State ex rel. Arcadia Acres v. Ohio Dep't of Job & Family Servs.,*
   123 Ohio St.3d 54, 2009-Ohio-4176, 914 N.E.2d 170 ..........................11

*Sterling Chems., Inc. v. Texaco, Inc.,*
   259 S.W.3d 793 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).....................28

*Stier v. Reading & Bates Corp.,*
   992 S.W.2d 423 (Tex. 1999) ................................................................17

*Texas Am. Corp. v. Woodbridge Joint Venture,*
   809 S.W.2d 299 (Tex. App.—Fort Worth 1991, writ denied) ................17

*U.S. ex rel. Sheldon v. Kettering Health Network,*
   816 F.3d 399 (6th Cir. 2016) ................................................................11

*Union Pac. Res. Grp., Inc. v. Rhone–Poulenc, Inc.,*
   247 F.3d 574 (5th Cir. 2001) ................................................................26

*Wheeler v. White,*
   398 S.W.2d 93 (Tex. 1965) ............................................................19, 20

*Williams v. Khalaf,*
   802 S.W.2d 651 (Tex. 1990) ................................................................17

*Williams v. WMX Techs., Inc.,*
   112 F.3d 175 (5th Cir. 1997) ..........................................................23, 28

*Woods v. William M. Mercer, Inc.,*
   769 S.W.2d 515 (Tex. 1988) ..........................................................18, 19

**STATUTES**

OHIO REV. CODE ANN. § 1302.98 ......................................................21, 22

TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a) (West 2008)..............17, 19

TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (West 2008) ..................19, 21

TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (West 2008) ........................20

**OTHER AUTHORITIES**

FED. R. CIV. P. 8.............................................................................22

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<b>Page(s)</b>

FED. R. CIV. P. 9 ........................................................................................................ passim

FED. R. CIV. P. 12 ...................................................................................................... passim

OHIO CIV. R. 41 ..............................................................................................................11

RESTATEMENT (SECOND) OF JUDGMENTS § 24 ................................................................14, 15, 16

RESTATEMENT (SECOND) OF JUDGMENTS § 25 ..............................................................................15

This is the second time that Plaintiffs JCZQ Family, LP and Jorge C. Zamora-Quezada, M.D., M.P.H., P.A.'s (collectively "JCZQ") has asserted these claims against Defendant Hitachi Medical Systems America, Inc. ("HMSA").  It failed the first time and is not entitled to try again. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), HMSA hereby moves to dismiss the Complaint filed by JCZQ with prejudice.[1]

## I.
## INTRODUCTION

JCZQ asserts various claims against HMSA all based on allegations that HMSA made several misrepresentations or promises that it failed to perform and otherwise breached contracts regarding the sale of two MRI machines—one in 2002 and another in 2005—as well as service agreements for the same machines.  JCZQ's claims are wholly frivolous and should be dismissed in their entirety for several independent reasons.

First, JCZQ's claims are barred by res judicata.  JCZQ's claims are each premised on allegations that are virtually identical to allegations that JCZQ previously asserted as counterclaims in a breach of contract action that HMSA filed against JCZQ in Ohio.  The Ohio Court dismissed all of JCZQ's counterclaims.  JCZQ now seeks to circumvent that judgment by filing the same claims here.

Moreover, JCZQ's claims are barred by the applicable statutes of limitation.  The longest potentially applicable statute of limitations for JCZQ's claims is four years.  And JCZQ's claims are all based on alleged facts and conduct that occurred more than five years ago, prior to JCZQ's breach of the agreements when it refused to pay HMSA.

---

[1] As HMSA noted in its Notice of Removal (ECF 1), defendant Greg Oesterling was fraudulently joined.  HMSA therefore respectfully requests that to the extent JCZQ asserts claims against Greg Oesterling, those claims be dismissed for lack of subject matter jurisdiction.  *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199, 210 (5th Cir. 2016) (holding that fraudulently joined party must be dismissed for lack of jurisdiction).

Finally, JCZQ's fraud-based claims should be dismissed, because JCZQ failed to allege those claims with particularity as Federal Rule of Civil Procedure 9(b) requires.

## II.
## BACKGROUND

### A.    HMSA Sold JCZQ Two MRI Machines More Than Ten Years Ago.

HMSA sold JCZQ two MRI machines, which are the subject of JCZQ's complaint. HMSA sold JCZQ the first MRI machine in June 2002.  *See* Ex. A, June 2002 HMSA Purchase Agreement (the "2002 Purchase Agreement").[2]  HMSA and JCZQ also entered into a service agreement for this MRI machine at the same time, which covered service after the one-year warranty provided in the Purchase Agreement expired on May 5, 2004.  *See* Ex. B, June 2002 Service Maintenance Agreement (the "2002 SMA").  The 2002 SMA expired May 4, 2008.  *Id.* HMSA and JCZQ entered into an additional service agreement for this MRI machine in May 2008, extending the service period to May 5, 2010.  *See* Ex. C, May 2008 Service Maintenance Agreement (the "2008 SMA").

HMSA sold JCZQ a second MRI machine in June 2005.  *See* Ex. D, June 2005 Purchase Agreement (the "2005 Purchase Agreement").   HMSA and JCZQ entered into a service agreement for the second MRI machine to cover service after the one-year warranty on this MRI machine expired.  *See* Ex. E, June 2005 Service Maintenance Agreement (the "2005 SMA"). That SMA expired on May 21, 2012.  *Id.*

---

[2] JCZQ did not attach these agreements to its petition, but referred to them throughout its Original Petition and they are central to JCZQ's claim. Pls.' Orig. Pet. ¶¶ 11-15, 19. Therefore, the Court may properly consider these documents for purposes of HMSA's Rule 12(b)(6) motion to dismiss.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.").

**B.**   **HMSA Sued JCZQ In Ohio For Breach Of Contract, And JCZQ Counterclaimed.**

In November 2009, JCZQ refused to pay HMSA the monthly installment fees required under the 2005 and 2008 SMAs.  *See* Ex. F, HMSA's Orig. Compl. ¶¶ 8-10, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Ct. C.P. Mar. 25, 2011).[3]  JCZQ continued to refuse to pay the monthly installment fees, and by June 2010, HMSA ceased servicing the MRI machines.  *Id.*, Ex. B.  In March 2011, HMSA terminated the 2005 and 2008 SMAs and sued JCZQ in the Summit County Court of Common Pleas in Ohio (the "Ohio Court") because JCZQ had materially breached the agreements by refusing to pay the monthly installment fees required under those agreements (the "Ohio Case").  *See id.*

On January 22, 2013, each of the JCZQ entities and individuals in the current suit filed counterclaims in the Ohio Case.  Ex. G, Defs.' Am. Answer and Countercls. at 5, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. Jan. 22, 2013).

JCZQ alleged claims in the Ohio Case related to the sale and service of the two MRI machines.  Specifically, JCZQ alleged claims for breach of each of the agreements the parties had entered into related to the sale and service of the MRI machines. *Id.* at 12 (breach of 2002 Purchase Agreement); *id*. at 20 (breach of the 2005 Purchase Agreement);  *id*. at 14 (breach of the 2002 SMA); *id*. at 14 (breach of the 2008 SMA); and *id*. at 22 (breach of the 2005 SMA). JCZQ further alleged breach of express and implied warranties related to both MRI machines. *Id.* at 12, 21.  Finally, JCZQ alleged claims for breach of the Ohio Deceptive Trade Practices Act, *id.* at 18, 23, and fraud and misrepresentation, *id.* at 25.

---

[3] A court may also take judicial notice of matters of public record, such as prior litigation, and consider these records in ruling on a 12(b)(6) motion to dismiss.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  HMSA therefore requests that this Court take judicial notice of the prior litigation between JCZQ and HMSA, *Hitachi Medical Systems America, Inc. v. JCZQ*, in the Summit County Court of Common Pleas in Ohio, cause number No. CV 2011 03 1669. The relevant pleadings from that case are attached hereto as Exhibits F - K.

Just as it does in its claims here, JCZQ alleged that HMSA made misrepresentations and promises about the quality, performance, and reliability of the MRI machines and failed to fulfill those promises. In particular, JCZQ alleged that "[HMSA] represented that the MRI machine would provide outstanding reliability." *Id.* at 7. And HMSA guaranteed in the Purchase Agreement that the machines would provide 99% uptime usage each quarter during the initial warranty period, and if the machines did not, HMSA would provide free service for an additional month for each quarter when the machines did not have 99% uptime. *Id.* at 8. HMSA also guaranteed in the SMAs that after the initial one-year service period in the Purchase Agreements expired, the MRI machines would provide 98% uptime usage each quarter during the terms of the SMAs, and if the machines did not, HMSA would provide a free month of service for each quarter the machines performed below 98% uptime usage. *Id.* at 9. But after installation of the MRI machines, JCZQ alleges that it determined that the machines were defective and did not provide adequate MRI results. *Id.* at 10. JCZQ further alleged that while HMSA attempted to repair the machines and continued to reassure JCZQ that the machines would work properly, the machines never worked properly. *Id.* HMSA denied and continues to deny these allegations. Indeed, HMSA prevailed on each of these claims in the Ohio Case.

C.    **The Ohio Court Dismissed Each Of JCZQ's Claims With Prejudice.**

The majority of JCZQ's claims were dismissed with prejudice by the Ohio Court on April 22, 2014, and the remainder were dismissed on July 27, 2015. In April 2014, the Ohio Court dismissed JCZQ's fraud and misrepresentation claims with prejudice for failure to state a claim for relief. Ex. H, J. Entry at 3, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Apr. 22, 2014), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016). The Ohio Court dismissed with prejudice JCZQ's Ohio Deceptive Trade Practices Act claims and

breach of express and implied warranty claims the same day because those claims are barred by the applicable statutes of limitations. *Id.* at 4-5. It also dismissed with prejudice JCZQ's negligent installation of equipment claims and unjust enrichment claims because valid enforceable contracts governed the relationship between the parties, barring both of these types of claims. *Id.* at 6-7.

On July 27, 2015, the Ohio Court dismissed with prejudice the remainder of JCZQ's claims and granted final judgment in favor of HMSA on its breach of contract claims as a result of misconduct by JCZQ in the case. Ex. J, Magistrate's Decision at 4, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Jul. 27, 2015), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016). The court did so because of JCZQ's repeated actions that were designed to thwart the litigation process.

JCZQ delayed more than five different trial settings over the course of that five-year litigation. *See* Ex. I, Pl.'s Resp. to Mot. to Withdraw as Counsel at 2, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. June 12, 2015). JCZQ did so by changing counsel four times and pursing unsubstantiated interlocutory appeals. *Id.* Indeed, just four days before the first trial setting, and after the Ohio Court had denied JCZQ's motion to continue that trial setting, JCZQ fired its counsel, resulting in the delay of trial. *Id.* In June 2015, just three months before the fifth trial setting, JCZQ once again fired its counsel. *Id.* After JCZQ's attorney moved to withdraw, the Ohio Court ordered a representative of JCZQ to attend a hearing to ensure that the parties were prepared for trial and aware of their obligations in the matter. Ex. J, Magistrate's Decision at 1-2, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Jul. 27, 2015), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016). JCZQ was notified of the need to attend this hearing by several methods. *Id.* at 5. JCZQ

nonetheless failed to appear as required. *Id.* After an in camera hearing with JCZQ's withdrawing counsel, the Ohio Court determined that "[JCZQ's] non-appearance and refusing to communicate with their attorney was done willfully and intentionally with the specific purpose of delaying the Trial in this matter." *Id.* at 4. The Ohio Court further ordered:

> Based upon the intentional and knowing misconduct of the Defendants in this matter related to their non appearance on July 13th, and considering the turbulence such has caused the Court and the Plaintiffs [sic], the Plaintiff is therefore awarded **Judgment for the Plaintiff** on its Complaint as to the remaining Counts, with a Damages Hearing to be set, and the Defendants remaining counter claims are **Dismissed with Prejudice**, and all costs to be paid by Defendant.

*Id.* at 5 (emphasis added). JCZQ is continuing its tactics before this Court by re-filing resolved claims in the hopes of prolonging and re-litigating old disputes that were resolved after an arduous litigation process in Ohio.

After an evidentiary hearing on damages, the Ohio Court awarded HMSA $584,663.88, including compensatory damages, attorneys' fees, and costs, for its claims against JCZQ for breach of the 2005 and 2008 SMAs. Ex. K, J. Entry at 1, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. Jan. 27, 2016).

**D.   JCZQ Alleges The Same Claims Here That It Lost In Ohio.**

On April 20, 2016, JCZQ brought this new case in the Hidalgo County District Court alleging the same claims related to the same MRI machines and agreements, and based on the same alleged fraudulent misrepresentations and promises related to those agreements. HMSA subsequently removed this action to this Court. In this case, JCZQ alleges claims for fraud in the inducement, fraud by non-disclosure, negligent misrepresentation, promissory estoppel, unjust enrichment/quantum meruit, and breach of contract. *See* Ex. L, Pls.' Orig. Pet.

The factual allegations underlying these claims are substantially identical to the factual allegations underlying the claims in the Ohio Case as shown in the table below comparing the allegations:

| This Case Pls.' Orig. Pet. | | Ohio Case Defs.' Am. Answer and Countercls., *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. Jan. 22, 2013) | |
|---|---|---|---|
| ¶ | Allegation | ¶ | Allegation |
| ¶ 12 | In each of these SMA's, [HMSA] represented to [JCZQ] that the MRI devices would provide outstanding reliability which would allow [JCZQ]'s associated entities greater revenue opportunities. | ¶ 6 | [HMSA] represented that the MRI machine would provide outstanding reliability lower capital equipment costs, enhance clinical capacity and allow [JCZQ] to obtain referrals from other physicians seeking similar diagnostic images. |
| ¶ 13 | [JCZQ] was required as part of the transaction to purchase SMA's for each of the MRI devices, and [HMSA] represented that if each machine did not provide a certain percentage of uptime, during any three month period, [HMSA] would extend the free service for one month. | ¶12 | Under the terms of the Purchase Agreement, [HMSA] guaranteed that if the machine did not provide 99% uptime usage during any three month period, [HMSA] would extend the free service period by one additional month. |
| ¶ 15 | [HMSA] represented that each of these machines would provide 98% uptime if the service on each machine was maintained on a regular monthly schedule according to the terms of the SMA. | ¶ 16 | The 2002 and 2008 Service Agreements for the Altaire machine expressly guaranteed that in the event the equipment did not provide 98% uptime during the contract coverage hours as measured over a three month period [HMSA] would extend the term of the agreement by one month for each quarter below the 98% guaranteed level. |
| ¶ 16 | [JCZQ]'s MRI technician attended a training program for routine operation of each MRI and received a certificate of completion to evidence his training for the correct operation of each of the two MRIs. | ¶19 | Upon completion of the training, [JCZQ]'s technologist was presented with a certificate of completion certifying that he was capable of correctly operating the newly purchased MRI machine. |

| ¶ 16 | The technician also received follow up training and [HMSA] confirmed that the MRIs were providing correct and quality results. | ¶¶ 20-21 | In 2003, shortly after installation of the MRI machine, [HMSA] provided routine follow-up training for [JCZQ]'s technologist. Having found that the technologist's exams were of good quality and correct, [HMSA] again noted that the technologist was capable of correctly operating the MRI machine with no further onsite training necessary. |
| --- | --- | --- | --- |
| ¶ 17 | Thereafter, [JCZQ] and [HMSA] discovered that the MRIs were not operating correctly in that the resulting images were not of sufficient quality to allow interpretation of the diagnostic images. | ¶ 22 | Subsequent to the installation of the MRI equipment, [HMSA] and [JCZQ] discovered that the MRI machine was defective in that the images produced by the MRI were extremely blurry, grainy and contained artifacts such that the images were not able to provide quality diagnostic images for the physicians. |
| ¶ 18 | Although, [HMSA] provided technical assistance on numerous occasions during the operation of the MRIs, the machines were defective and [HMSA]'s technicians were never able to completely repair the machines. | ¶ 23 | [HMSA] provided technical assistance on numerous occasions throughout 2003 through 2005, in an attempt to repair the defective conditions of the MRI machine, but was never able to completely repair the problems. |
| ¶ 18 | [HMSA]'s agents, including but not limited to OESTERLING continued to reassure [JCZQ] that the machines were quality devices and that they would be repaired to be productive according to the revenue expectations of [JCZQ]. | ¶ 24 | Throughout this entire period of time, [HMSA]'s agents continued to reassure [JCZQ] that they were doing all they could do and the MRI machine would be repaired and usable. |

JCZQ pursued these claims in Ohio and failed.  It should not be permitted another opportunity to pursue the same baseless claims here.

### III.
### ARGUMENT

#### A.    Standard Of Review.

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d

738, 742 (5th Cir. 2008); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A

claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664, (2009)

(internal citations omitted).

While a complaint need not contain detailed factual allegations, it must set forth "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a

complaint] must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*

(quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State

Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v.

Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196

(5th Cir. 1996).  The court may consider the pleadings, including the complaint, and any

documents attached to the complaint.  *Collins*, 224 F.3d at 498–99.  Likewise, "[d]ocuments that

a defendant attaches to a motion to dismiss are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to [the plaintiff's] claim[s]."  *Id.*

**B.**    **Res Judicata Bars JCZQ's Claims.**

The res judicata effect of a prior judgment is a question of law and may be properly

disposed of in a 12(b)(6) motion to dismiss if the pleadings, record before the court, and matters

in the public record show that the plaintiff's claim is barred by res judicata. *See R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 (5th Cir. 2005) (holding court can consider pleadings, record before the court, and matters in the public record in ruling on a Rule 12(b)(6) motion to dismiss); *see also Hall v. Hodgkins*, 305 F. App'x 224, 228-29 (5th Cir. 2008) (holding pleadings from prior case were documents in the public record that could be considered in ruling on a motion to dismiss under Rule 12(b)(6) based on res judicata).  Res judicata is the legal cannon providing that "a valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof." *Medina v. I.N.S..*, 993 F.2d 499, 503 (5th Cir. 1993).  A "federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *E.D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982); *see Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996).  The state court judgment relevant here is the Ohio Case between HMSA and JCZQ.

Under Ohio law, the doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the *transaction* or *occurrence* that was the subject matter of the previous action.  Res judicata promotes the principle of finality of judgments by requiring plaintiffs to present *every possible ground for relief* in the first action." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, at ¶ 5. (emphasis added) (quotation and citations omitted).  And it prevents the piecemeal litigation of suits by prohibiting separate causes of action in separate cases based on the same factual allegations. *Id.*

Ohio applies a four-element test to determine whether res judicata applies, and requires the party asserting res judicata to show "(1) a prior final, valid decision on the merits by a court

of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (applying Ohio law).  These elements are satisfied here.

### 1.    The Prior Judgment In The Ohio Case Was Final On The Merits.

Under Ohio law, any dismissal other than a voluntary dismissal or dismissal for lack of jurisdiction or for failure to join a necessary party is an adjudication on the merits.  OHIO CIV. R. 41(B); *see also*, *e.g.*, *State ex rel. Arcadia Acres v. Ohio Dep't of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, 914 N.E.2d 170, at ¶ 15.  ("dismissal grounded on a complaint's failure to state a claim upon which relief can be granted constitutes . . . an adjudication on the merits. As a result, res judicata bars refiling the claim.") (quotations omitted).

JCZQ's claims in the Ohio Case were dismissed on the merits for various reasons.  Most were dismissed with prejudice on April 22, 2014 for failure to state a claim, as barred by the applicable statutes of limitations, or as improper claims as a matter of law.  Ex. H, J. Entry at 3, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Apr. 22, 2014), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016).  The remainder of JCZQ's claims were dismissed with prejudice on July 27, 2015, as a result of JCZQ's litigation misconduct through a form of death-penalty sanctions.  Ex. J, Magistrate's Decision at 4, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Jul. 27, 2015), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016).  But none of JCZQ's claims were voluntarily dismissed, dismissed due to lack of jurisdiction, or dismissed for failure to join a necessary party.  *See* OHIO CIV. R. 41(B).

Accordingly, under Ohio law, each of the dismissals was an "adjudication of the merits." *See id.* As a result, the first element of the res judicata test is satisfied.

### 2. The Parties Are Identical To Or In Privity With One Another In Both This Case And The Ohio Case.

In Ohio, application of res judicata requires the parties to the first action be identical to, or in privity with, the parties in the second (precluded) action. *Johnson's Island, Inc. v. Bd. of Trs. of Danbury Twp.*, 69 Ohio St.2d 241, 244, 431 N.E.2d 672 (1982). Ohio courts "have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine" of res judicata. *Kirkhart*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, at ¶ 8. "Thus, a mutuality of interest, including an identity of desired result, may create privity." *Id.* (internal quotation marks omitted).

Here, the Court need not apply this broad standard because the parties in the first matter are in fact identical to those in this matter. HMSA, the defendant in this action, was the plaintiff in the Ohio Case, and counter-defendant to JCZQ's counterclaims. JCZQ, JCZQ Family, LP and Jorge C. Zamora-Quezada, M.D., M.P.H., P.A., the plaintiffs in this action were the original defendants in the Ohio Case, and specifically named as counter-plaintiffs asserting the counterclaims in the Ohio Case. Ex. G, Defs.' Am. Answer and Countercls. at 5, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. Jan. 22, 2013). Accordingly, the second element of the res judicata test is satisfied.

### 3. JCZQ's Claims Were, Or Could Have Been, Litigated In The Ohio Case.

To apply res judicata in Ohio, the claims in the precluded action must be claims that "could have been litigated in the first action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). As the "could have" phrasing indicates, this element concerns only the legal possibility of bringing the disputed claims in the previous action, not whether the specific claims

were actually brought in the prior action.  *See Hapgood*, 127 F.3d at 494; *Demsey v. Demsey*, 488 Fed. App'x. 1, 3, 8 (6th Cir. 2012) (applying Ohio law) (emphasizing that the disputed claims "could have been" raised in the previous action); *Doe ex rel. Doe v. Jackson Local Sch. Dist.*, 422 Fed. App'x. 497, 501 (6th Cir. 2011) (applying Ohio law) (holding plaintiff could have litigated disputed claim in previous action where state's rules of civil procedure allowed such claims).

JCZQ alleges breach of contract and unjust enrichment claims here that are identical to the claims litigated and disposed of against JCZQ in the Ohio Case.  JCZQ's breach of contract claims here and the breach of contract claims asserted in the Ohio Case are based on the same operative allegations:  HMSA's alleged failure to perform under the 2002 and 2005 Purchase Agreements as well as the 2002, 2005, and 2008 SMAs.  Likewise, JCZQ's unjust enrichment claims are identical to the unjust enrichment claims it asserted in the Ohio Case for money it paid to HMSA pursuant to these contracts.  These claims therefore were in fact brought in the previous action, preventing their relitigation here.  *See Hapgood*, 127 F.3d at 494.

JCZQ asserts additional claims here for fraud in the inducement, fraud by non-disclosure, negligent misrepresentation, and promissory estoppel.  Again, these arise out the same transactions or occurrences as JCZQ's other claims.  And they mirror the Ohio DTPA and fraud claims asserted in the Ohio Case.  Moreover, these claims, while styled slightly differently, are essentially the same claims from the Ohio Case and thus could have been brought in Ohio.  *See Hapgood*, 127 F.3d at 494 (holding that causes of action based on same conduct alleged in previous action but not asserted in previous action were barred by res judicata, because they could have been asserted).  The claims here rely on the same alleged misrepresentations as in the

13

Ohio Case, and JCZQ could have—and should have—brought these claims in the Ohio Case. *See id.*

There is no reason that JCZQ could not have asserted its claims for fraud in the inducement, fraud by non-disclosure, and negligent misrepresentation in the Ohio case where it asserted—and lost—fraud and Ohio DTPA claims that mirror its claims here. Likewise, there is no reason JCZQ could not have brought its promissory estoppel claim in the Ohio Case where it asserted—and lost—breach of contract claims based on the same alleged promises at issue here. Instead, JCZQ chose not to bring those causes of action, and instead waited and filed them here. It is just this type of repetitive and piecemeal litigation that res judicata is intended to prevent. *Kirkhart*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, at ¶ 8. Accordingly, the third element of the res judicata test is satisfied.

### 4. JCZQ's Claims Arise Out Of The Same Transaction Or Occurrence That Was The Subject Matter Of The Ohio Case.

Ohio courts follow the Restatement (Second) of Judgments in applying the res judicata doctrine to preclude a second action based on the same "transaction, or series of connected transactions, out of which the [first] action arose." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226, (1995). The second action involves the same "transaction" if it concerns the same "common nucleus of operative facts." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b). The Restatement section, quoted in *Grava*, provides in full:

> [i]n general, the expression ["transaction, or series of connected transactions"] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b.

This element does not require the claims in both actions to be identical, and instead "applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." *Grava*, 73 Ohio St.3d at 383, 653 N.E.2d 226 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 25). The fact that "a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories . . . would emphasize different elements of the facts." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. c)).

In sum, satisfaction of this element under Ohio law does not require that both cases involve identical causes of action, proof of identical elements, identical damages claims, or even the presentation of exactly the same evidence. *See Grava*, 73 Ohio St.3d at 383, 653 N.E.2d 226. In this case, this element is easily satisfied.

JCZQ's claims here and its claims in the Ohio Case are nearly identical. In both cases, JCZQ alleged that HMSA promised that the MRI machines would provide "outstanding reliability" and promised 99% uptime in the Purchase Agreements, 98% uptime in the SMAs, and promised to provide free service if the machines did not perform to this level. JCZQ further alleged that the machines were ultimately defective, despite HMSA's efforts to repair those machines. JCZQ then alleged that HMSA nonetheless continued to falsely reassure JCZQ that the machines were quality devices that would perform well.

Indeed, a direct comparison of JCZQ's allegations in the Ohio Case to its allegations in this case further shows that the allegations mirror each other as demonstrated in the table *supra* at 7-8.

The allegations underlying JCZQ's claims here and its counterclaims in the Ohio Case are indisputably related "in time, space, origin, [and] motivation." *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b. Moreover, because both the claims here and the counterclaims in the Ohio Case are based on HMSA's alleged failure to provide quality, working MRI machines, failure to service those machines, or fraudulent statements about the machines, those claims would "form a convenient unit for trial purposes," as "the witnesses or proofs in [this] action would tend to overlap the witnesses or proofs relevant to the [Ohio Case]." *See id.*

The nearly identical allegations in the two cases demonstrate that JCZQ's claims here and its counterclaims in the Ohio Case share a "common nucleus of operative facts." *See id.* The claims in this case therefore constitute the same "transaction, or series of connected transactions, out of which the [Ohio Case] arose." *See id.* The fact that JCZQ couches these claims as different causes of action is irrelevant, *see id.*, and is merely a thinly veiled attempt to bring the same claims once again. Such a tactic is precisely what res judicata is intended to prevent. *See id.*

Accordingly, all four elements of res judicata are satisfied, and res judicata applies to bar the current action in toto. *See id.* This Court should dismiss JCZQ's Complaint in its entirety for this reason alone.

## C.    Each Of JCZQ's Claims Is Barred By The Applicable Statute Of Limitations.

JCZQ's claims should also be dismissed because each of JCZQ's causes of action is barred by the applicable statute of limitations. Whether an applicable statute of limitations bars

an action may be raised in a motion to dismiss under Rule 12(b)(6) if it is evident from a plaintiff's pleadings and the public record that the action is time-barred and the pleadings fail to raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). The question of when a cause of action accrues and the applicability of the statute of limitations is generally one of law for the court to determine. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).[4]

Each of JCZQ's causes of action is based on alleged facts that occurred at least five years ago and are barred under the applicable statute of limitations.

1.    **Fraud In The Inducement, Fraud By Non-Disclosure, And Negligent Misrepresentation.**

JCZQ asserts claims for fraud in the inducement, fraud by non-disclosure, and negligent misrepresentation related to the sale and service of the MRI machines. Texas law prescribes a four-year statute of limitations for fraud and fraud by non-disclosure actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (West 2008); *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990); *Holland v. Thompson*, 338 S.W.3d 586, 593 (Tex. App.—El Paso 2010, pet. denied) (applying four year statute of limitations to fraud by non-disclosure claim). A shorter two-year statute of limitations applies to claims for negligent misrepresentation. *Texas Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302–03 (Tex. App.—Fort Worth 1991, writ

---

[4] Federal courts apply the forum state's substantive law, and choice of law rules, when adjudicating diversity-jurisdiction claims unless a contract or other law requires otherwise. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). Each of the relevant agreements provides that "This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio." *See* Exs. A - E. The Texas Supreme Court has held that choice of law provisions containing this particular language apply only to the "interpretation and enforcement of the contractual agreement" and do not encompass related tort claims. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999). HMSA therefore applies the law of Ohio to JCZQ's contract claims, and because JCZQ does not assert which state's substantive law applies to its remaining tort claims, HMSA applies the default forum state law of Texas to JCZQ's tort claims.

denied); *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 873 (Tex. App.—Dallas 1989, writ denied). A cause of action for any of these types of fraud and misrepresentation claims accrues on the date that the defendant makes the allegedly false representations, when the fraud was discovered, or when the fraud might reasonably have been discovered through the exercise of reasonable diligence. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Hoover v. Gregory*, 835 S.W.2d 668, 676 (Tex. App.—Dallas 1992, writ denied).

JCZQ bases its fraud in the inducement, fraud by non-disclosure, and negligent misrepresentation claims on allegations related to the quality of the MRI machines both prior to the purchase of those machines in 2002 and 2005 and alleged promises in the SMAs.

JCZQ alleges that HMSA represented that the MRI machines would provide outstanding reliability prior to the purchase of the machines in 2002 and 2005. Ex. L, Pls.' Orig. Pet. ¶ 12. JCZQ further alleges that HMSA represented that the machines would provide certain percentage of uptime in the Purchase Agreements and 98% uptime in the SMAs, the last of which was executed in 2008. *See id.* ¶¶ 13, 15. And finally, JCZQ alleges that HMSA continued to reassure JCZQ that the machines were reliable and would perform well during the course of its performance under the contract. *See id.* ¶ 18. JCZQ's allegations are vague on the time and place of these representations, but even taking these vague allegations as liberally as possible, JCZQ has not alleged any representations after March 2011, when HMSA had terminated the 2005 and 2008 SMAs based on JCZQ's material breach of those agreements. *See* Ex. F, HMSA's Orig. Compl. ¶¶ 8-10, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. March 25, 2011). Once HMSA elected to terminate the agreements and sue for breach of contract, HMSA's service and obligations related to the MRI machines ceased. *See Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 2008–Ohio–4413, 897 N.E.2d 184,

¶ 7 (3d Dist.) (holding that upon a material breach of contract, party is entitled to terminate agreement, stop performance because it is relieved of its obligation to perform, and sue for breach). The Ohio Court later confirmed that JCZQ had in fact breached the agreements, granting judgment for HMSA on its breach of contract claims. *See* Ex. J, Magistrate's Decision at 4, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Jul. 27, 2015), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016).

Accordingly, more than five years have passed since March 2011, the latest point in time that the alleged representations could have been made. The four-year statute of limitations for fraud claims has thus expired, and JCZQ's claims for fraud in the inducement and fraud by non-disclosure are barred as a matter of law. *See Woods*, 769 S.W.2d at 517; TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a). The shorter two year statute of limitations applicable to negligent misrepresentation claims likewise bars JCZQ's negligent misrepresentation claims. *See Texas Am. Corp.*, 809 S.W.2d at 302.

### 2.    Promissory Estoppel.

JCZQ also asserts promissory estoppel claims related to the same factual allegations that underlie its fraud claims. Promissory estoppel claims are governed by a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008); *Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (applying four-year statute of limitations in TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 to promissory estoppel claims). A promissory estoppel cause of action accrues when the promisor breaches its promise to the promisee. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965); *Bloom v. Burkholder Corp.*, No. 05–94–01297–CV, 1995 WL 379272, at *2 (Tex. App.—Dallas May 30, 1995, no writ) (not designated for publication).

Like with the fraud-based claims addressed above, JCZQ alleges that HMSA made representations only before March 2011. These representations related to the quality of the MRI machines and HMSA's service. More than five years have passed since JCZQ breached the contract and HMSA ceased service, asserting claims for breach of contract, the last possible date of breach of those promises and thus the four-year statute of limitations for promissory estoppel bars JCZQ's promissory estoppel claims. *See Wheeler*, 398 S.W.2d at 96.

### 3. Unjust Enrichment And/Or Quantum Meruit.

JCZQ also asserts claims for unjust enrichment and quantum meruit. Unjust enrichment and quantum meruit claims are governed by the two-year statute of limitations in section 16.003 of the Texas Civil Practice and Remedies Code. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007). A cause of action for unjust enrichment or quantum meruit accrues whenever a party provides property or services to another that the party complains has been wrongly or unjustly retained. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 411 (5th Cir. 2004).

It is unclear what property JCZQ contends HMSA retained or unjustly gained based on JCZQ's pleadings. Regardless, JCZQ has not alleged any exchange of property or services after March 2011. Accordingly, more than five years have passed since any alleged exchange of property or services between JCZQ and HMSA, and therefore more than five years have passed since any action for unjust enrichment or quantum meruit could have accrued. *See Mayo*, 354 F.3d at 411. The two-year statute of limitations for unjust enrichment and quantum meruit therefore bars JCZQ's unjust enrichment and quantum meruit claims. *See id.*

20

4.    **Breach Of Contract.**

JCZQ also asserts breach of contract claims related to the 2002 and 2005 Purchase Agreements and the SMAs.  Each of the agreements provides that Ohio law governs the terms of the agreements.  *See* Exs. A - E.[5]  Under Ohio law, as in Texas,[6] a four-year statute of limitations applies to contracts for the sale of goods and services.  OHIO REV. CODE ANN. § 1302.98(a).  A claim for breach of contract accrues at the time of the breach.  *Id.* § 1302.98(b).

JCZQ breached the 2005 and 2008 SMAs beginning in November 2009 by refusing to pay the monthly installments required under the agreements.  *See* Ex. H, J. Entry at 3, *Hitachi Med. Sys. Am. Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Apr. 22, 2014), *adopted by* Ex. K, J. Entry at 1 (Summit Cty. C.P. Jan. 27, 2016). (judgment for HMSA on its claims for breach of contract).  In March 2011, HMSA elected to terminate the agreements and sue for breach of the agreements.  *See* Ex. F, HMSA's Orig. Compl. ¶¶ 8-10, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Summit Cty. C.P. March 25, 2011).  The Ohio Court later confirmed that JCZQ had in fact breached the agreement as of November 2009, granting judgment in favor of HMSA.  *See* Ex. J, Magistrate's Decision at 4, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. 2011-03-1669 (Jul. 27, 2015), *adopted by* Ex. K, J. Entry at 1 (Summit

---

[5] Each Purchase Agreement also provides that "No suit or other proceeding may be brought on an alleged breach of warranty of HMSA set forth in this Agreement more than twelve (12) months after termination of such warranty."  Ex. A, 2002 Purchase Agreement at 14; Ex. D, 2005 Purchase Agreement at 12.  To the extent JCZQ's breach of contract claims are in fact alleging breaches of the warranty provisions of the Purchase Agreements, those claims are barred by the agreed upon one year statute of limitations.

[6] Likewise, under Texas law, breach of contract claims are governed by a four-year statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008).  And also like under Ohio law, under Texas law, a breach of contract claim accrues immediately upon breach.  *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006).  And thus, whether Ohio law or Texas law applies, the result is the same: JCZQ's claims for breach of contract are barred by the statute of limitations.

Cty. C.P. Jan. 27, 2016).    Upon JCZQ's material breach of the 2005 and 2008 SMAs and HMSA's suit for breach of the agreements, HMSA's service and obligations related to the MRI machines ceased.  *See Hensel*, 178 Ohio App. 3d 140, 2008–Ohio–4413, 897 N.E.2d 184, ¶ 7. Accordingly, any alleged breach of the various agreements between JCZQ and HMSA related to the MRI machines would have had to have occurred prior to HMSA's election to sue for breach of contract in March 2011.  Because more than five years have passed since HMSA's obligations under the agreements had ceased, March 2011, JCZQ's breach of contract claims are barred by the four-year statute of limitations.  *See* OHIO REV. CODE ANN. § 1302.98(a); *see Hensel*, 178 Ohio App. 3d 140, 2008–Ohio–4413, 897 N.E.2d 184, ¶ 7.

\* \* \*

Because all of JCZQ's claims are barred by the applicable statute of limitations, this Court should dismiss JCZQ's Complaint in its entirety for this reason, as well.

**D.    JCZQ Has Failed To State A Claim For Its Fraud-Based Claims.**

In addition to the two complete and independent bars to all of JCZQ's claims described above, JCZQ has also failed to state a valid cause of action for several of its claims, in particular, its fraud-based claims.  JCZQ cannot satisfy the requirements of Federal Rule of Civil Procedure 9(b).

A complaint that fails to satisfy Federal Rule of Civil Procedure 8(a)(2) fails to state a valid claim for relief and is subject to dismissal under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555. Federal Rule of Civil Procedure Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal citation, quotation marks, and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8

22

requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action.  *Id.* at 555 & n.6.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation and citation omitted).  A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

In alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  Rule 9(b) requires the plaintiff to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted).

JCZQ alleges various fraud-based causes of action against HMSA: fraud in the inducement, fraud by non-disclosure, and negligent misrepresentation.  JCZQ has failed to state a viable cause of action against HMSA under these theories of liability under the federal pleading standards and applicable state law.

### 1.	JCZQ Has Failed To State A Cause Of Action For Fraud In The Inducement.

JCZQ alleges claims for fraud in the inducement under Texas law.  Ex. L, Pls.' Orig. Pet. ¶¶ 20-23, 33-36.  Under Texas law, in order to state a claim for common-law fraud based upon

an affirmative misrepresentation, a plaintiff must allege that the defendant made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (quoting *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex. 1996)). A promise of future performance does not constitute actionable fraud under Texas law unless the promisor did not intend to perform at the moment he made his promise. *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994) (requiring plaintiff to plead specific facts indicating that the party did not intend to perform at the time it made its promise under 9(b)). And statements that amount to "broad, and vague, commendatory language . . . or praising them as good," are mere puffery and not statements of material fact. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889–90 (Tex. App.—Austin 2008, no pet.).

JCZQ fails to state a valid fraud claim, because it does not allege facts showing who made the alleged fraudulent statements, when and where the speaker made the alleged fraudulent statements, or the specific contents of the alleged fraudulent statements. Rather, JCZQ alleges various vague statements made by unidentified speakers. JCZQ identifies an alleged speaker with respect to only one allegedly actionable representation—though it omits the time and place of the alleged representations and the specific contents of the alleged fraudulent representations. JCZQ alleges that HMSA's representative Greg Oesterling "continued to reassure Plaintiffs that the machines were quality devices and that they would be repaired to be productive according to the revenue expectations of Plaintiff." Ex. L, Pls.' Orig. Pet. ¶ 15. But under Texas law, these vague reassurances that the "machines were quality devices" are mere puffery and not actionable statements of fraud. *See Ghosh*, 251 S.W.3d at 889–90.

24

Furthermore, the remainder of the alleged representation—that the machine would be repaired—is not shown to have been made without the intent to perform. Indeed, JCZQ alleges facts indicating that HMSA did in fact at least attempt to perform the alleged promise to repair the equipment. As JCZQ alleges "Defendants provided technical assistance on numerous occasions during the operation of the MRIs." Ex. L, Pls.' Orig. Pet. ¶ 18. JCZQ has therefore failed to allege any facts indicating that HMSA did not intend to perform the alleged promises.

Likewise, the remainder of JCZQ's allegations are vague and fail to identify any particulars of the circumstances of the alleged misrepresentations or the speaker, thus failing to state a claim for fraud against HMSA under Rule 9(b). Furthermore, these allegations of vague statements are at most puffery or statements of future performance for which JCZQ has not alleged any facts from which we may infer an intent not to perform at the time the representations were made. Indeed, JCZQ has not even specified the timeframe for these alleged statements.

In particular, JCZQ's allegations that HMSA employees represented that the MRI equipment it was selling to JCZQ was "reliable," Ex. L, Pls.' Orig. Pet. ¶ 12, are not actionable under Texas law. *Ghosh*, 251 S.W.3d at 889–90. Moreover, the alleged statements that the MRI machines would provide a certain percentage of uptime, Ex. L, Pls.' Orig. Pet. ¶¶ 13, 15, are promises of future performance, and such promises do not constitute actionable fraud under Texas law unless the promisor did not intend to perform at the time it made the promise. *See Matter of Haber Oil Co., Inc.*, 12 F.3d at 437. And JCZQ has not alleged any specific facts that could even provide an inference that HMSA did not intend to perform those promises at the time they were made.

Accordingly, JCZQ has failed to plead with the required particularity a valid cause of action for fraudulent inducement against HMSA.

### 2.    JCZQ Has Failed To State A Cause Of Action For Fraud By Non-Disclosure.

JCZQ has also asserted claims against HMSA for fraud by non-disclosure.  Ex. L, Pls.' Orig. Pet. ¶¶ 24-26, 37-49.  Fraud by non-disclosure is a sub-category of fraud that occurs when a party with a duty to disclose a material fact fails to disclose that fact.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).  To state a claim for common-law fraud based on non-disclosure, Texas law requires a plaintiff to allege: (1) the defendant concealed or failed to disclose a material fact that the defendant knew the plaintiff was ignorant of or did not have the opportunity to discover; (2) the defendant intended to induce the plaintiff to take some action by concealing or failing to disclose the material fact; and (3) the plaintiff suffered as a result of acting on the defendant's non-disclosure.  *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001).

A plaintiff must also allege facts showing the defendant had a duty to disclose the material fact.  *Union Pac. Res. Grp., Inc. v. Rhone–Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001).  An affirmative duty to disclose may arise by operation of law:  (1) where there is a fiduciary or confidential relationship between the parties; (2) where a person voluntarily discloses some information; (3) when a person makes a representation and new information makes that earlier misrepresentation false or misleading; and (4) when a person makes a partial disclosure and conveys a false impression.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 771 (S.D. Tex. 2007); *see also Union Pacific Resources*, 247 F.3d at 586.

Rule 9(b) imposes an additional obligation on plaintiffs claiming fraud by non-disclosure to "plead the type of facts omitted, the place in which the omissions should have appeared, and

the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quotations omitted). JCZQ has failed to meet any of Rule 9(b)'s strict requirements.

JCZQ's petition does not allege any facts to support its fraud by non-disclosure claim other than those that it alleges for its fraud claim. It therefore utterly fails to allege any facts that HMSA may have concealed, the place in which the omissions should have appeared, or the way in which the omitted facts made the representations misleading. *See id.* Nor does JCZQ allege any facts to show that HMSA had an affirmative duty to disclose any facts. *See Enron Corp.*, 540 F. Supp. 2d at 771. And therefore, JCZQ has failed to state a cause of action for fraud by non-disclosure.

### 3. JCZQ Has Failed To State A Cause Of Action For Negligent Misrepresentation.

JCZQ next asserts a claim against HMSA for negligent misrepresentation, relying on the same factual allegations as its fraudulent inducement and fraud by non-disclosure claims. Ex. L, Pls.' Orig. Pet. ¶¶ 40-42, 27-29. Once a fraud claim is dismissed under Rule 9(b), a claim for negligent misrepresentation based on the same operative facts must also be dismissed unless "it is possible for the Court to describe a simple redaction that removes allegations of fraud from the complaint, but leaves the plaintiff's valid and intelligible negligent misrepresentation claim intact." *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 752 (N.D. Tex. 2005) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001)). In such circumstances, if the plaintiff lists factual allegations in one section, intertwining the allegations for its fraud and negligent misrepresentation claims, and lists its causes of action in separate sections, the plaintiff must allege specific facts to support its negligent misrepresentation claim, apart from those that support its fraud claim, in its corresponding

subsection or the negligent misrepresentation must be dismissed with the fraud claim. *See id.*; *see also Williams*, 112 F.3d at 177.

JCZQ has alleged no facts specific to its negligent misrepresentation claim at any point in its petition but instead relies entirely on its fraud allegations to support its negligent misrepresentation claim. Because JCZQ has intertwined its factual allegations regarding fraud and negligent misrepresentation in one section and has not alleged any specific facts to support its negligent misrepresentation claim elsewhere, it has failed to state a claim for negligent misrepresentation against HMSA for the same reasons that it failed to state a fraud claim as set out above. *See Schlotzsky's Inc.*, 238 F.3d at 365; *Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 752.

Moreover, under Texas law, "a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). JCZQ does not specify any separate and independent injury apart from the damages it alleges resulted from HMSA's breach of contract. Ex. L, Pls.' Orig. Pet. ¶¶ 46-48. JCZQ has therefore failed to state a valid cause of action for negligent misrepresentation for this reason, as well.

## IV.
## <u>CONCLUSION</u>

For the foregoing reasons, HMSA respectfully requests that the Court dismiss JCZQ's Complaint in its entirety with prejudice.

Dated: June 17, 2016

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Craig A. Stanfield*
Craig A. Stanfield
Texas Bar No. 24051371
S.D. Tex. Bar No. 789722
craig.stanfield@morganlewis.com
Chad E. Stewart
Texas Bar No. 24083906
S.D. Tex. Bar No. 2868363
chad.stewart@morganlewis.com
1000 Louisiana, Suite 4000
Houston, Texas 77002
713.890.5000 Telephone
713.890.5001 Facsimile

ATTORNEYS FOR DEFENDANT
HITACHI MEDICAL SYSTEMS
AMERICA, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of June, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James P. Grissom
1111 Nolana Avenue, Suite D
McAllen, TX 78504-3747
Tel. (956) 994-1127
Fax. (888) 400-6407
jpglawyer01@gmail.com
*Attorney for Plaintiffs JCZQ Family, LP and*
*Jorge C. Zamora-Quezada, M.D., M.P.H., P.A.*


/s/ Craig A. Stanfield
Craig A. Stanfield